UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| PANDORA FRANCHISING, LLC, a Maryland limited liability company, PANDORA JEWELRY LLC, a Maryland limited liability company, and PANDORA VENTURES, LLC, a Maryland limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>MAURICE'S JEWELERS II, INC., a Florida corporation, MAURICE'S JEWELERS, INC., a Florida corporation, FORENSA, LLC, a Florida limited liability company, and ANDREW KOPPEL, an individual,<br><br>Defendants. | Case No.:  1:23-cv-1287 |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Pandora Franchising, LLC, Pandora Jewelry LLC, and Pandora Ventures, LLC (collectively, "Pandora") hereby bring this Complaint for Declaratory Judgment against Maurice's Jewelers II, Inc. ("Maurice's II"), Maurice's Jewelers, Inc. ("Maurice's"), Forensa, LLC ("Forensa") (collectively, the "Koppel Entities") and Andrew Koppel ("Koppel", and, together with the Koppel Entities, the "Defendants"), and allege as follows:

**INTRODUCTION**

1. Pandora brings this action for declaratory relief to clarify Pandora's legal obligations to the Defendants.

2. Pandora intends to open and operate a "Pandora Concept Store" (defined below) at the Dolphin Mall in Miami, Florida (the "Dolphin Mall"). Koppel, the principal of the Koppel Entities, has unequivocally threatened to sue Pandora because he claims that Pandora's opening of

70252267;5

a Pandora Concept Store at the Dolphin Mall violates Pandora's alleged promise to Koppel and the Koppel Entities that they would first be offered the opportunity to open a Pandora Concept Store at the Dolphin Mall (the "Alleged Promise").

3. Pandora has no record of the Alleged Promise. Despite Pandora's repeated requests, Koppel has failed to produce any credible evidence of an enforceable agreement related to the Alleged Promise. Even if Pandora made the Alleged Promise, the Alleged Promise is either not enforceable as a matter of law or, alternatively, because it was superseded by, merged into, or released by a settlement agreement the parties entered into in 2017.

4. Indeed, Maurice's II previously alleged in a complaint against Pandora filed in 2016 that the Koppel family had a "right of first refusal" to open new Pandora locations at the Dolphin Mall, which allegation Pandora denied. The dispute was resolved via a Confidential Settlement and Release of Claims (the "Settlement Agreement") entered among the parties in 2017. A true and complete copy of the Settlement Agreement is attached hereto as **Exhibit A**.

5. The Settlement Agreement superseded or released any alleged "right of first refusal." Nevertheless, that "right of first refusal" is the same Alleged Promise Koppel now wrongly claims prevents Pandora from opening a Concept Store in the Dolphin Mall. Accordingly, Pandora submits there is an actual, ongoing controversy among the parties warranting a declaratory judgment.

6. Pandora seeks a judgment from this Court declaring that Pandora never made the Alleged Promise, and, even if Pandora made the Alleged Promise, it is not enforceable, and/or it was superseded by, merged into, or was released by the Settlement Agreement, such that Pandora is entitled to open and operate a Pandora Concept Store at the Dolphin Mall.

**PARTIES**

7.     Pandora Franchising, LLC is a Maryland limited lability company with its principal place of business at 250 W. Pratt Street, 17th Floor, Baltimore, Maryland 21201 in Baltimore County, Maryland. The sole member of Pandora Franchising, LLC is Pandora Jewelry LLC, a Maryland limited liability company.

8.     Pandora Jewelry LLC is a Maryland limited liability company with its principal place of business at 250 W. Pratt Street, 17th Floor, Baltimore, Maryland 21201 in Baltimore County, Maryland. The sole member of Pandora Jewelry LLC is Pandora Jewelry, Inc., a Maryland corporation with its principal place of business in Baltimore County, Maryland.

9.     Pandora Ventures, LLC is a Maryland limited liability company with its principal place of business at 250 W. Pratt Street, 17th Floor, Baltimore, Maryland 21201 in Baltimore County, Maryland. The sole member of Pandora Ventures, LLC is Pandora Jewelry LLC, a Maryland limited liability company.

10.    Maurice's II is a Florida corporation with its principal place of business at 11401 NW 12th Street, E-414, Miami, Florida 33172 in Miami-Dade County, Florida.

11.    Maurice's is a Florida corporation with its principal place of business at 11865 South Dixie Highway, Miami, Florida 33156 in Miami-Dade County, Florida.

12.    Forensa is a Florida limited liability company with its principal place of business at 8888 SW 136th St., # 509, Miami, Florida 33176 in Miami-Dade County, Florida. Based upon Pandora's information and belief, the members of Forensa are Andrew A. Koppel, Erin Koppel, Meaghan Koppel, Kierstin Koppel, and/or Karen Joy Koppel, all of whom are residents and citizens of Miami-Dade County, Florida.

13. Andrew Koppel is a resident and citizen of Miami-Dade County, Florida and resides at 10380 SW 126 St., Miami, Florida 33176.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this declaratory judgment action under 28 U.S.C. § 1332(a)(1) because the action is between citizens of different states, and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

15. The Koppel Entities are subject to personal jurisdiction in this district by way of their agreement in the Settlement Agreement to "irrevocably submit to the exclusive jurisdiction of [state and federal court located in the state of Maryland, county of Baltimore]." *See* Ex. A. at 5, ¶ 15. Likewise, Koppel is subject to personal jurisdiction in this district pursuant to the Settlement Agreement as he is closely related to the Settlement Agreement and acts as an agent for the Koppel Entities.

16. The Defendants are also subject to personal jurisdiction in this district under Md. Code, Cts. & Jud. Proc. § 6-103(b)(1) & (2).

17. Venue is proper in this district as the Settlement Agreement states that "any action or proceeding by either of the Parties to enforce this Settlement Agreement shall be brought only in state or federal court located in the state of Maryland, county of Baltimore. The Parties . . . waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue." *See* Ex. A. at 5, ¶ 15.

18. Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b)(3), as there is no district in which the action may otherwise be brought and the Defendants are subject to this Court's personal jurisdiction.

## **GENERAL ALLEGATIONS**

*The Agreements*

19. Pandora Jewelry LLC is the exclusive United States distributor of a line of jewelry products sold under the name and trademark "PANDORA" (the "Pandora Products").

20. Pandora Jewelry LLC sells Pandora Products only to a select group of authorized retailers who meet Pandora's high standard for representing the Pandora brand image and reputation for quality.

21. Pandora Products are currently sold to consumers in two separate retail formats: (1) Concept Store and (2) Shop-in-Shop.

22. A Concept Store is either a company-owned or franchised store operating under the name PANDORA that carries a complete assortment of Pandora Products, sells only Pandora Products, has a branded Pandora storefront, and is furnished only with Pandora fittings and displays.

23. A Shop-in-Shop is a non-franchised, clearly defined space dedicated to Pandora in a third-party owned store or department store that also sells non-Pandora products. A Shop-in-Shop has Pandora fittings and displays and carries a wide assortment of Pandora products. A Shop-in-Shop will have a portion of its premises look very much like a Concept Store on the inside (except smaller), generally without the Pandora branded store front.

24. Pandora Products were previously sold to consumers via Gold, Silver, and White Retailers.

25. A Gold Retailer was required to carry at least five lines of Pandora Products.

26. Silver and White Retailers were required to carry at least four and two lines of Pandora Products, respectively.

27. In February 2011, Maurice's II entered into the Pandora Jewelry, LLC Master Purchase Authorization for Sales to Authorized Retailers with Pandora Jewelry LLC, which granted Maurice's II the right to operate as a Silver Retailer selling certain Pandora Products within its jewelry store in the Dolphin Mall (the "Dolphin MPA").

28. On November 1, 2011, Pandora Franchising, LLC and Forensa entered into a Franchise Agreement, which granted Forensa a franchise to operate a Concept Store selling Pandora Products at The Falls Mall in Miami, Florida (the "The Falls Franchise Agreement").

29. On February 27, 2015, Pandora Jewelry LLC and Maurice's entered into the Pandora Jewelry, LLC Authorized Retailer Terms and Conditions, which granted Maurice's the right to operate a Shop-in-Shop selling certain Pandora Products within its jewelry store located at 11865 S Dixie Highway, Miami, Florida (the "Dixie MPA").

30. On October 3, 2016, Pandora Jewelry LLC terminated the Dolphin MPA.

**The 2016 Action**

31. On October 25, 2016, Maurice's II filed a Complaint against Pandora Jewelry LLC and Pandora Franchising, LLC in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (the "2016 Action").

32. On December 7, 2016, Pandora removed the 2016 Action to the U.S. District Court for the Southern District of Florida. *See Maurice's Jewelers II, Inc. v. Pandora Jewelry, LLC, et al.*, Case No. 16-cv-25079-MORENO (S.D. Fla. 2016).

33. Pandora subsequently moved to dismiss the Complaint, and Maurice's II filed the First Amended Complaint.

34. On February 3, 2017, Pandora moved to dismiss the First Amended Complaint.

35. On August 30, 2017, the district court granted in part and denied in part Pandora's Motion to Dismiss First Amended Complaint and allowed Maurice's II to file an amended complaint.

36. On September 13, 2017, Maurice's II filed the operative Second Amended Complaint. A true and complete copy of the Second Amended Complaint is attached hereto as **Exhibit B**. The Second Amended Complaint asserted claims for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), promissory estoppel, and breach of the Dolphin MPA.

37. In the Second Amended Complaint, Maurice's II alleged that Pandora refused to sell its full catalogue of Pandora Products to Maurice's II in violation of the Dolphin MPA and applicable state and federal law. *See* Ex. B. Maurice's II also alleged that Pandora failed to timely provide required disclosures regarding restrictions on what a franchisee may sell, and that Pandora was required to disclose to Maurice's II that, as a Silver Retailer, it was not permitted to sell certain products at the Dolphin Mall. *Id.* at 10-11. Maurice's II further alleged that it relied on Pandora's representations that it would be permitted to carry all Pandora Products with the exception of watches, despite its status as a Silver Retailer, as it would, in reality, "be like a 'small concept store.'" *Id.* at 12-14.

38. Most relevantly, Maurice's II alleged that the "Koppel family" had a "right of first refusal to open new stores", including any store to be located at the Dolphin Mall. *Id.* at 5, ¶ 18.

39. On October 11, 2017, Pandora filed its Answer to Maurice's II's Second Amended Complaint and a Counterclaim against Maurice's II, Maurice's, and Forensa, asserting counterclaims for breach of the Dolphin MPA, unfair competition under the Lanham Act, trademark infringement under the Lanham Act, accounting, declaratory judgment relating to The

Falls Franchise Agreement, and declaratory judgment relating to the Dixie MPA (the "Answer and Counterclaim"). A true and complete copy of the Answer and Counterclaim is attached hereto as **Exhibit C**.

40. In relevant part, Pandora denied Maurice's II's allegation that the "Koppel family" had a "right of first refusal to open new stores," including any store to be located at the Dolphin Mall. Ex. C at 5, ¶ 18.

*The Settlement Agreement*

41. On December 22, 2017, Pandora and the Koppel Entities entered into the Settlement Agreement to resolve the 2016 Action. *See* Ex. A.

42. The Settlement Agreement contains a merger provision that states:

This Agreement, the Dolphin MPA (as amended by the First Amendment to Pandora Jewelry, LLC Authorized Retailed Terms and Conditions that is attached to this Settlement Agreement as Exhibit B), the Falls Franchise Agreement (as amended by the First Amendment to Pandora Franchise Agreement #330 that is attached to this Settlement Agreement as Exhibit C), and the Dixie MPA contain all of the understandings and representations between the Parties relating to the subject matter herein **and supersede all prior and contemporaneous understandings, discussions, agreements, representations, and warranties, both written and oral, with respect to such subject matter** (the "Merger Provision").

*See* Ex. A at 7, ¶ 23 (emphasis added).

43. Accordingly, any agreement relating to the Koppel family's alleged "right of first refusal", including as alleged in the 2016 Action and denied by Pandora, was merged into and superseded by the Settlement Agreement.

44. In the Settlement Agreement, the Koppel Entities, on behalf of themselves and their respective present and former parents, subsidiaries, affiliates, officers, directors, shareholders, members, successors, and assigns, released any and all claims against Pandora previously or then held by the releasing parties, except for:

8

    a.    Any obligations under The Falls Franchise Agreement (as amended by the First Amendment to Pandora Franchise Agreement #330 that is attached to this Settlement Agreement as Exhibit C) with respect to the period of time after the Execution Date;

    b.    Any obligations under the Dixie MPA with respect to the period of time after the Execution Date;

    c.    Any obligations under the Dolphin MPA (as amended by the First Amendment to Pandora Jewelry, LLC Authorized Retailer Terms and Conditions that is attached to this Settlement Agreement as Exhibit B) with respect to the period of time after the Execution Date; and

    d.    Any obligations under the Settlement Agreement (the "Koppel Release").

*See id.* at 2-3, ¶ 8.

45. Accordingly, even if Pandora had given Defendants a "right of first refusal," including as alleged in the 2016 Action, any such "right of first refusal," including any claims arising out of any such "right of first refusal," were released by the Settlement Agreement, because there is no "right of first refusal" in The Falls Franchise Agreement, the Dixie MPA, or the Dolphin MPA.

46. The Settlement Agreement also contains a modification and waiver provision that states:

> No provision of this Settlement Agreement may be amended or modified unless such amendment or modification is agreed to in writing and signed by the Parties. No waiver by any Party of any breach by any other Party of any condition or provision of this Settlement Agreement shall be deemed a waiver of any waiver of any other provision or condition, nor shall the failure of or delay by either of the parties in exercising any right, power, or privilege under this Settlement Agreement operate as a waiver to preclude any other or further exercise of any right, power, or privilege (the "Modification and Waiver Provision").

*See id.* at 5, ¶ 17.

47. The Defendants have failed to provide a record of any amendment or modification of the Settlement Agreement, and Pandora has no record of any such amendment or modification.

48. The Settlement Agreement contains a choice-of-law and forum selection provision that states:

> This Settlement Agreement is governed by, and construed in accordance with, the laws of the State of Maryland, without regard to the conflict of laws provisions of Maryland. Any action or proceeding by either of the Parties to enforce this Settlement Agreement shall be brought only in state or federal court located in the state of Maryland, county of Baltimore. The Parties hereby irrevocably submit to the exclusive jurisdiction of such courts and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue (the "Forum Selection Clause").

*See id.* at 5, ¶ 15.

***Pandora' Plans to Open and Operate a Concept Store at the Dolphin Mall***

49. In February 2023, Pandora communicated to Maurice's II's principal, Koppel, that Pandora will be opening a company-owned (non-franchise) Concept Store at the Dolphin Mall.

50. Pandora has signed a lease for the Concept Store. The lease is for a term of eight (8) years, and is valued at approximately $320,000 per year. To date, and in addition to the lease, Pandora anticipates it will invest approximately $500,000 into the Concept Store.

51. On March 13, 2023, Pandora Jewelry LLC issued Maurice's II a notice that the Dolphin MPA would be terminated as of July 31, 2023, to correspond with Pandora's planned opening of the Concept Store at the Dolphin Mall. A true and complete copy of the notice of termination is attached hereto as **Exhibit D**.

52. In response, in March 2023, Koppel threatened to bring suit against Pandora for violating the Alleged Promise.

53. Pandora has no record of the Alleged Promise.

54. Even if Pandora made the Alleged Promise, the Alleged Promise is not enforceable.

55. Even if Pandora made the Alleged Promise, it predated and was terminated by merger or released by the Settlement Agreement.

56. Even if the Alleged Promise occurred after the Settlement Agreement, such Alleged Promise is not enforceable as a matter of law. Despite Pandora's repeated requests, Koppel has failed to produce any credible evidence of an enforceable agreement related to the Alleged Promise.

57. On April 17, 2023, Koppel wrote to Pandora via email demanding that Pandora "buy out" his rights related to operations at the Dolphin Mall and The Falls Mall for an exorbitant price, stating:

> Our settlement agreement does not cast aside written and oral agreements pre or post date. I am prepared with a 15 year history and a dozen witnesses that will certainly convince you to settle once into an expensive litigation…Once into litigation I will not settle . . . . Litigating will be noisy and I would fear others will follow. Your concept store will not open on time.

A true and complete copy of Koppel's correspondence to Pandora is attached hereto as **Exhibit E**.

58. If any or all Defendants sue Pandora or otherwise attempt to interfere with Pandora's lawful plans to open and operate a Concept Store in the Dolphin Mall, Pandora will suffer not only monetary damages, but also irreparable harm to its brand and reputation.

59. Pursuant to Paragraph 16 of the Settlement Agreement, Pandora is entitled to recover reasonable attorneys' fees and costs in the event they prevail in an action to enforce the terms of the Settlement Agreement.

60. Pandora has retained the undersigned attorneys to represent them in this matter and have agreed to pay reasonable attorneys' fees and costs.

## COUNT I – DECLARATORY JUDGMENT
**(Pursuant to 28 U.S.C. § 2201 and Md. Code, Cts. & Jud. Proc. § 3-403)**

61. Pandora incorporates its allegations in paragraphs 1 through 60 above as if fully set forth herein.

62. There is an actual controversy within the jurisdiction of this Court between Pandora and the Defendants as to whether Pandora made the Alleged Promise to Defendants, and if so, whether the Alleged Promise is enforceable, and/or whether the Alleged Promise was terminated by merger or released by the Settlement Agreement.

63. As communicated by Koppel to Pandora, Defendants believe Pandora made the Alleged Promise, and they intend to file suit against Pandora for violating the Alleged Promise if Pandora proceeds with its plans open a Concept Store in the Dolphin Mall. *See* Ex. E.

64. Even worse, Koppel has threatened to interfere with the opening of Pandora's Concept Store, which will result in damages and irreparable harm above and beyond the "expensive litigation" threatened by Koppel. *See id.*

65. Pandora asserts that Pandora never made the Alleged Promise to Koppel (or any of his entities or other affiliates, including the Koppel Entities).

66. Pandora further asserts that even if the Alleged Promise was made, it is not enforceable, or it pre-dated and was merged into the Settlement Agreement pursuant to the Merger Provision, or it was released by the Koppel Release. *See* Ex. A.

67. Accordingly, there is a bona fide, actual, present, and ongoing controversy among the parties regarding their rights, duties, and obligations related to operation of a Concept Store at the Dolphin Mall.

68. As Pandora's plans to open the Concept Store are underway, and Koppel has communicated direct threats of interference, including suit and delay, this controversy is of sufficient immediacy and reality to warrant the exercise of this Court's discretion to issue a declaratory judgment to clarify the uncertainty of the parties' rights and obligations.

WHEREFORE, Pandora respectfully requests a declaration from this Court that (1) Pandora never made the Alleged Promise; (2) if Pandora made the Alleged Promise, it is not enforceable; (3) the Alleged Promise, even if made and enforceable, was terminated by merger with the Settlement Agreement, or was released by the Settlement Agreement; and (4) Pandora is entitled to open and operate a Concept Store at the Dolphin Mall. Pandora also seeks an award of its reasonable attorneys' fees and costs, as well as any other relief the Court deems just or necessary.

Dated: May 16, 2023

Respectfully submitted,

**PANDORA FRANCHISING, LLC, PANDORA JEWELRY LLC, and PANDORA VENTURES, LLC**

By their attorneys,

/s/ _____
Noam Fischman, Esq.
Maryland Bar No. 9912140240
AKERMAN LLP
750 Ninth Street, N.W., Suite 750
Washington, D.C. 20001
Phone: (202) 824-1725
Noam.fischman@akerman.com

- and –

Sara A. Brubaker, Esq. (*pro hac vice pending*)
Florida Bar No.: 105769
Riya Resheidat, Esq. (*pro hac vice pending*)
Florida Bar No: 124819
AKERMAN LLP
Post Office Box 231
Orlando, FL  32802-0231
Phone: (407) 423-4000
Fax:    (407) 843-6610
sara.brubaker@akerman.com
riya.resheidat@akerman.com
*Counsel for Plaintiffs Pandora Franchising, LLC, Pandora Jewelry LLC, and Pandora Ventures, LLC*